The Honorable Judges in and for the 7th Judicial Circuit, deary, deary, deary, all persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for argument is Cielak v. Nicolet Union High School District. Mr. Giordano. Good morning, Your Honor, and may it please the Court. My name is Philip Giordano, and I'm the attorney for the plaintiffs and the appellants, Joel Cielak and Baron Hodges in this case. We are here regarding the decision of the District Court for the Eastern District of Wisconsin regarding a claim that had been brought under Section 1983. Without going too detailed, in July of 2022, Mr. Cielak and Hodges filed their complaint in the Federal District Court alleging four causes of action. Violations of substantive due process, denial of equal protection, 1983 for failure to supervise, and a claim under Section 1985. As this Court, I'm sure, is well aware of the circumstances, the claims that have been brought are under the Monell line of cases, and Mr. Cielak and Mr. Hodges were students of the defendant, Nicolet High School. In the 1980s, Mr. Cielak and Mr. Hodges were students that were sexually abused by a teacher, David Johnson. They were repeatedly abused, and they were abused off campus at Mr. Johnson's apartment and on off hours. The claims that have been brought by the plaintiffs deal with the various elements under Monell liability, which establish municipal liability, and the plaintiffs have the duty to demonstrate an underlying constitutional deprivation, municipal action that amounts to a custom, policy, or practice, deliberate indifference by the municipality to the plaintiff's constitutional rights, and the municipality's action was being the moving force behind the plaintiff's injury. The complaint was filed in the U.S. District Court, had considered a motion to dismiss by the defendants, and there was briefing that was done, as I'm sure this Court is aware. No oral argument was allowed, and the plaintiffs had asked if deficiencies were identified for leave to amend, all of which were denied. There was no opportunity for my clients to have even an opportunity to redress or hear or to present an argument regarding the deprivation of constitutional rights that they suffered. The Court found that there was no legally sufficient case that could be brought under the Monell liability. Now, as this Court is well aware, there was an investigation that had been done, and that demonstrated that in 1983, Barron Hodges had complained to a particular Nicolet teacher and told her of the circumstances of the abuse that was going on by David Johnson. The Nicolet teacher did the right thing. She went to her supervisor and made a report through her husband to the Glendale police. Mr. Hodges was a freshman at the time. He was one of the few minority students in the Nicolet school, and in July of 1983, the school board held a meeting to which Mr. Johnson attended, and they were on actual notice as to the circumstances of what was going on with David Johnson. So, Mr. Giordano, on appeal then, you are not arguing that Mr. Selak's report of the incident to Mr. Rice in 1980 constituted notice to the school board, is that correct? No, we still maintain that. I was going to address Mr. Selak separately, but we are still maintaining, according to our brief, the 1980 report to Mr. Rice was notice that was given to Nicolet and the substantiation of that, because recognizing that Mr. Rice was not at the apex of authority, he was not the Nicolet board. However, it is clear, not only from the allegations, but from the very words of the defendants themselves upon their investigation, that the Baron Hodges circumstance was not the only circumstance to which the 1983 board meeting was considered. They considered it for multiple students. So we suggest that, especially at the motion to dismiss stage, that the Nicolet board and the policymaking authority had that actual notice that arose, presumably, out of the Rice communication. But what allegations can you point to that would substantiate the claim that there were numerous other reports of similar conduct to the school board in 1980? Well, we don't, I believe, put the word numerous in our pleadings. However, I would direct this court's attention to the actual investigation that was done by the investigator interviewing members of the board, which is Exhibit Z, to our pleadings. But my understanding is that that deals with what the board knew or didn't know as of 1983. What about with regard to 1980? Well, the board determination in 1983 discusses students. And in paragraph 5 of Exhibit Z, which is the finding signed by the investigator after interviewing the board members, it specifically says, the board discussed Mr. Johnson's inappropriate invitation to students to perform physical exercises at Mr. Johnson's home. Now, purportedly, according to the Nicolet defense, only Baron Hodges is the one that has come to their attention. And we are at the motion to dismiss stage. We are obviously not, pre any discovery, they have control of all the information. And that allegation, which is incorporated by reference and must be given high credibility, because it is a statement of the investigator of the board members of the 1983 meeting. So from that, you would like us to draw the inference that you believe is reasonable, that back in 1980, there were sufficient instances that reported to the board that the board knew of it as of then? What I'm saying is that together with the allegation of Myra Taxman, when she communicates directly with the teacher. Again, that's 1983, right? It's still 1983. But it also, it is talking about predating the July 1983 event. And I think the inference, together with what is clearly the deliberate indifference that was demonstrated by the Nicolet board. How so? Where were they deliberately indifferent? You're talking about a meeting, an investigation. Where were they deliberately indifferent? Burying their head in the sand and not doing anything. I know of no investigation that was done. I don't know, perhaps Nicolet has that information. We do not, nor have we alleged it. There is an interview. But didn't they take action against Mr. Johnson? And didn't they write a report? Well, we don't know of a report. The report was done in the 2017-2018. Oh, got it, got it. But they took action against Johnson. You said they had a meeting and they took action against Johnson, right? They reprimanded him or whatever it was that they did back in 1983. But what they did is they said, Mr. Johnson, we're going to give you one bite of the apple on sexual abuse. But how is that deliberately indifferent? Deliberately indifferent equals doing nothing. And it does. Because in this circumstance, as reprimanded. I don't understand the contention that doing nothing and doing not enough in the plaintiff's view are identical. What is it that establishes the proposition that action that doesn't satisfy the plaintiff is the same as no action? No, I think the comparison should be made as to the doings. Don't just say no. I apologize, Your Honor. You need to answer the question. I apologize, Your Honor. Respectfully, I apologize. I think the standard that should be compared is the 2017-2018 actions when they were notified. No, you're not answering my question. I apologize. Could you restate the question? What authority do you have for the proposition that doing nothing should be equated to not doing enough? For the purpose of deliberate indifference, is that the question, Your Honor? You can cite whatever authority you have. The deliberate indifference that we are referencing. Look, I have asked a precise question. What authority do you have for the proposition that doing nothing should be equated to not doing enough? Now, there may or may not be any authority for that, but I wish you would address that question. The LaPorta case talks about deliberate indifference, and we suggest that doing something, particularly where it is not on campus. Do you think the LaPorta case supports the proposition that not doing enough is the very same thing in the eyes of the law as doing nothing? It's not the very same thing, Your Honor. No, it isn't. Agreed. But you've been equating them, and you need to face up to the fact that they are different. I fully understand that, but deliberate indifference does not always just equal nothing. What it also references, which is the circumstances of this case, is putting into place a supposed— If you look at the Eighth Amendment cases— I apologize. If you look at the Eighth Amendment cases where deliberate indifference is very important, that's actually a fundamental difference. If the prison's doctors intervene, but poorly and ineffectually, they don't violate the deliberate indifference standard under the Eighth Amendment. That's very well established. You're arguing that this should be treated differently, and I'm trying to figure out whether you have authority for that, and if so, why it is the same deliberate indifference standard. I am not familiar with Eighth Amendment cases, so respectfully I can't say whether that is applicable to this particular case. But I do believe that it is clear from the reporter and from the case law that deliberate indifference cannot mean that they can abandon the children that are subject to their responsibility. So that's where you get in a comparable circumstance as White v. Rockefeller, where the police left the children on the side of the road, and they were abandoned. And that is analogous to the circumstances in this case, because the abandonment of the students, including the plaintiffs— Mr. Hodges, who had made the reference to the teacher, which was brought to the school board, and the only steps that they took were ones to monitor him, allegedly, on campus, where there were no allegations of abuse being occurred. They were off campus and off hours. They certainly did not try to put in any notification to the Nicolet community. They did not notify the police. They did not terminate Mr. Johnson. What rule of federal law requires the police to be notified? Well, not a federal law, but many states, and we are now talking— No, your claim is one under federal law. Understood. So I have a simple question. What rule of federal law requires the police to be notified? I'm not aware of one. You are aware that the Supreme Court has expressly rejected such arguments. I am— Most recently in the United States against Texas. Understood. Well, if you pitch your case on a theory that the Supreme Court has rejected, you can see why you're getting skeptical questions. Understood. You need to pitch your case on a theory the Supreme Court has accepted. The facts of whether or not the actions are subject to whether or not it's deliberate indifference should go to a fact finder, not just on a 12b6 motion. I think that this court's position and the skeptical views that you are now expressing may result in a motion for summary judgment or may result in a jury verdict against the plaintiffs. But we never even got to that stage. We never were even granted leave to amend, but the most appropriate determination, which many of the cases have, is after discovery has occurred, where a fact finder— There's one other issue you need to address. The defendants contend that we should affirm the judgment on an alternative ground, that is, that the suit is untimely. You've been mentioning events from the 1980s. The Wisconsin statute of limitations applicable at the time was six years or two years from reaching the age of majority. It does seem that this case is rather late. Agreed. The notification occurring in 2017 to 2018, when the Nicolet board conducted its investigation, and this court has upheld in Barry Aviation the discovery rule, and particularly in light of circumstances where there is such— What you need to discover is your injury. But there seems no doubt that Sivak and Hodges discovered their injury, well, more than 40 years before the suit was brought. Isn't that a problem? I would refer this court to Snyder Hill v. Ohio State, where the court specifically said—and that's a Sixth Circuit case recognized—says that a body of literature specifically says that people do not recognize that they have been sexually abused. They have not— Has the Supreme Court ever adopted that rule? I'm not aware of— The Supreme Court's rule for accrual of a claim under federal law is the rule stated in the United States against Kubrick, which is you have to understand you've been injured, and by whom. Again, the discovery rule, which this court— No, I'm asking a question about a concrete Supreme Court case. I'm inviting you to discuss the rule in Kubrick and explain, if you can, why that rule is not dispositive. I don't think—I'm only somewhat familiar with the rule and with the determination in Kubrick. But to me, Your Honor, and I think one must consider the stage of the case and the fact that nothing has occurred except a complaint, not even an amended complaint. That would leave opportunities for further— Well, I don't think I'm getting through. I'm sorry, but— Right? And— This is your opportunity to discuss the rules of— Completely understand— Your reply brief responds by saying, well, it took extensive therapy for the plaintiffs to get up the courage to file such a lawsuit. That does not seem to be consistent with the legal standard in Kubrick. That's why I'm giving you a chance to discuss the legal standard, which your reply brief didn't do. I'm trying to do you a favor, counsel. I understood, and I appreciate that, Your Honor. The reply brief specifically refers to the fact that the accrual of the date cannot be determined until the injury is discovered or should have been discovered. And therapy and therapeutic sessions, being a very inexact science, do not specifically determine, particularly where you have a young child who's a freshman in high school, does not know, even if he reaches the age of a majority, that a statute of limitations would occur and that he— Look, the Supreme Court has held that not knowing about the statute of limitations is not relevant. I understand. The Supreme Court has held that not knowing that the behavior was actionable is not relevant. That was the precise holding of Kubrick. You don't need to know that you have a legal claim for the time to be running. You really need to phrase your argument in terms of the Supreme Court standards. It's—but the discovery rule goes to when the injury— This has nothing to do— I give up. Well, Your Honor, I would respectfully ask if I can reserve the remaining time for rebuttal. Certainly, Counsel. Thank you. Mr. Tomei. Good morning, Your Honors. May it please the Court. Attorney Matthew Tomei on behalf of the defendant, Appelese. I guess I'd like to begin first, I guess, with Judge Lee, your earlier question relating to whether or not the plaintiffs are arguing on appeal that, in fact, the 1980 notice should lead to any liability for the defendant, Appelese, the notice to the gym teacher. I was surprised to hear that they are now arguing that on appeal, and I think it presents some of the problems we have faced in this case, which are outlined in our waiver argument, which is that there seem to be very shifting sands in terms of the theories and the arguments that the plaintiffs are making. I won't belabor the waiver point. I mean, it's addressed in the briefs, but I'll make two brief points. One, the arguments that the plaintiffs are making on appeal are not nuances on the claims they presented below. As I understand it, there are arguments on appeal. They are now arguing— There's only one claim in this case. There are just multiple legal arguments. Understood, Judge Easterbrook. I would say the underlying constitutional violation on which they are basing their claims of Monell liability and supervisory liability is different. The underlying constitutional violation that they alleged below was the alleged sexual abuse of Joel Selak and Baron Hodges' students between 1980 and 1983. The underlying constitutional violation on which they are relying on appeal was the alleged sexual abuse of Joel Selak as an adult well after he had graduated in the post-1983 period. And what they claim is the psychological harm that Baron Hodges incurred by being in school after 1983, even though he was no longer being sexually abused. Those are distinct underlying constitutional claims on which they are basing their Monell— underlying constitutional theories on which they are basing their Monell liability. And I think for that reason, we don't think it's a nuanced argument. We think it's a new argument on appeal that was waived below. I mean, certainly with respect to Selak, the district court expressly found waiver. I mean, it's in the district court's opinion, notwithstanding the arguments that are now being made. It was expressly found waived. I guess the last point I want to make is obviously the court has discretion to address new arguments. That's something you do. I think it's rarely granted. I think this is a case that probably doesn't call for it. To quote Alioto, this appeal does not warrant an act of grace. The plaintiffs were represented by counsel below. They didn't make those arguments. I'm happy to address any questions the court has with respect to deliberate indifference or the plaintiff's constitutional theories, but we think this is a pretty straightforward case at the end of the day. And I think this is why the district court didn't grant leave to amend, because like the Bonchek case that Plaintiffs' Counsel brought prior to this one, the alleged acts of sexual abuse of the plaintiffs as students occurred prior to the school board ever having notice. Do we have any insight into the school board's thinking on why it gave or imposed the restrictions that it did on Mr. Johnson versus any other restriction? In other words, Judge Easterbrook did correctly state the standard for deliberate indifference, and the question really goes to the subjective belief of the school board. And certainly if there's evidence, although I don't see it, if there's evidence or allegations the school board knew that it was going to be ineffectual, that these measures were half-hearted, knew that they would be futile, that would be one thing. If the school board honestly believed that the restrictions that it imposed would be sufficient to address the concerns, that's quite another. And I'm wondering if there's anything in the record so far as we can see that would lead one to lean one way or the other on that. I don't know that there's anything in terms of the record in terms of the investigation that was conducted. It's my understanding, and I'm quoting the record from memory here, but that the recollection of board members was that conditions were imposed, that the letter couldn't be found, that there was a flood in the district in 2010. But I think in terms of facts that are alleged in the complaint or aren't alleged in the complaint, what is not alleged in the complaint is that there was an act of sexual abuse of a student after the board meeting in 1983. And there's no allegations in the complaint that I can find that the board acted knowing that their restrictions would be futile or ineffectual? No, not that I'm aware of. I think the only acts of abuse post-dating the 1983 report were with respect to Mr. Selak, who at that point was an adult. And again, this is in the briefs, but I don't know how you can say that the school board is on notice or being deliberately indifferent to the possibility that Mr. Johnson was engaging in sexual abuse with somebody who had already graduated and was an adult. So I just don't think those facts are there. At the end of the day, I think the briefs adequately address the points we want to make. I'm happy to answer any questions the court has with respect to any of our other arguments. With respect to the amendment question, I understand, generally speaking, courts give one opportunity to amend. I'll just highlight the points we made in our brief. There was never any proposed amended complaint. I know the judgment was entered at the same time the order came down. I know that doesn't always happen. But often people will make a motion after a judgment is entered at the same time the order comes down for, I believe, a Rule 59 motion, and at which point they will identify what they want to include in an amended complaint. And I think the Plaintiff's Appeal Brief doesn't include any additional facts that they would include in an amended complaint. I think ultimately they're arguing their new theories based on the facts that they alleged in their original complaint, but in terms of actual new facts that they would include in a new amended complaint, I don't think they're there. And given the waiver issues we believe we've identified, I think granting them leave to amend to reassert claims that were never properly preserved before the district court in the first place, I think you've got futility issues and I think you've got undue prejudice issues at that point. So with that, I will sit back down unless the court has any questions. Thank you, Counsel. Anything further, Mr. Giordano? Just briefly, Your Honor. With respect to the Bonchek case that is part of the basis of the district court's decision, Bonchek is clearly distinguishable in that he graduated before the 1983 report. He never returned to Nicolet thereafter. He had no further contact with Mr. Johnson. In sharp contrast, Mr. Hodges was a student for three continued years thereafter. Mr. Selak continued to have contact and was abused by Mr. Johnson for the next several years into his 20s. Clearly, the lack of the ability to amend was based upon the court's, the district court's decision that there was no legal plausibility, there was no right or character. Did you ever tell the district judge what you would add to the complaint if allowed to amend? We did not have, I did not have anything specific, but clearly a right to amend would have been... Because I didn't see that in your appellate brief either. There was no oral argument which I... No, look, I said I didn't see that in your appellate brief either. So tell us what you would add if allowed to amend. Mr. Hodges suffered psychological harm, as we say in paragraph 103 and 131 of the non-complaint. This is something you would add if allowed to amend. Yes. Just putting underlining under something already there doesn't do it. Additional allegations of the circumstances for the next three years. The multiple years that Mr. Selak continued to be together with Mr. Johnson and abused by Mr. Johnson is not fully fleshed out in terms of allegations. Those allegations are addressed in the complaint and they would have been certainly further addressed together with the psychological harm that my clients had suffered. Those were allegations that we had. We would have and, again, it's unheard of not to even get one opportunity to amend when a request is made and we have made that request. Thank you for your time. Thank you, Your Honor. Thank you very much, counsel. The case is taken under advisement.